# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-30088 |
| *Plaintiff-Appellee*, | D.C. No. 1:19-cr-00224-AA-1 |
| v. | |
| JAMES CALVIN PATTERSON, AKA James Calvin Patterson II, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted December 8, 2023
Submission Withdrawn December 11, 2023
Resubmitted July 27, 2026
Portland, Oregon

Filed July 27, 2026

Before: Marsha S. Berzon, Jacqueline H. Nguyen, and Eric
D. Miller, Circuit Judges.

Opinion by Judge Miller;
Concurrence by Judge Berzon

# SUMMARY[*]

## Criminal Law

The panel affirmed the sentence imposed on James Patterson following his guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Finding that Patterson had previously committed three violent felonies on different occasions, the district court imposed a mandatory minimum sentence under the Armed Criminal Career Act of 1984, 18 U.S.C. § 924(e)(1).

The panel concluded that in light of *Erlinger v. United States*, 602 U.S. 821 (2024), the district court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the judge, rather than a jury, determined that Patterson's prior offenses occurred on different occasions. This error, however, was harmless beyond a reasonable doubt because the record contained overwhelming and uncontroverted evidence that Patterson committed his offenses on different occasions.

Applying the modified categorical approach, the panel held that Patterson's two prior Oregon convictions for third-degree assault were violent felonies, as was his prior Oregon conviction for strangulation, and these prior convictions therefore constituted Armed Criminal Career Act predicates. As to the assault convictions, Patterson argued that the Oregon statute was overbroad for several reasons,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

including that it allowed conviction as an accomplice without proof of intentional or knowing conduct. The panel concluded that this argument failed for two reasons: Patterson was convicted as a principal, not an accomplice, and Oregon accomplice liability requires proof of intentional or knowing conduct.

Concurring, Judge Berzon wrote that she concurred in the majority opinion in all but one respect. She wrote that for the prior assault convictions, the charging documents established that Patterson was convicted as a principal, not as an accomplice. That ended the inquiry under the modified categorical approach, and it was not necessary to address Patterson's remaining arguments as to accomplice liability. Judge Berzon agreed with the majority opinion that, under *Erlinger*, the district court violated *Apprendi* by itself determining whether Patterson committed the predicate offenses relevant to his sentence enhancement on different occasions, rather than submitting that inquiry to the jury. Judge Berzon wrote separately to express her continued concerns regarding this court's application of the harmless error review standard established in *Neder v. United States*, 527 U.S. 1 (1999), to cases, like this one, in which no jury trial took place.

# COUNSEL

Suzanne Miles (argued), Assistant United States Attorney, Criminal Appeals Section Chief; Kelly A. Zusman, Assistant United States Attorney; Natalie K. Wight, United States Attorney; Office of the United States Attorney, United States Department of Justice, Portland, Oregon; Marco A. Boccato, Assistant United States Attorney, Office of the United States Attorney, United States Department of Justice, Medford, Oregon; for Plaintiff-Appellee.

Elizabeth G. Daily (argued), Assistant Federal Public Defender; Office of the Federal Public Defender, Portland, Oregon; Brian C. Butler, Assistant Federal Public Defender; Office of the Federal Public Defender, Medford, Oregon; for Defendant-Appellant.

**OPINION**

MILLER, Circuit Judge:

James Patterson pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Finding that Patterson had previously committed three violent felonies on different occasions, the district court imposed a mandatory minimum sentence under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e)(1). Patterson appeals, arguing first that his Fifth and Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), were violated because the judge, rather than a jury, determined that his prior offenses occurred on different occasions, and second that the court erred in holding that his prior Oregon convictions—two for third-degree assault and one for strangulation—are violent felonies. In light of the Supreme Court's decision in *Erlinger v. United States*, 602 U.S. 821 (2024), we conclude that the district court violated *Apprendi*, but that the error was harmless. We also conclude that Patterson's Oregon state felony convictions are violent felonies. We therefore affirm.

I

On March 30, 2019, police officers in Medford, Oregon, stopped a vehicle in which Patterson was a passenger. Believing that Patterson was armed, an officer asked him to step out of the vehicle. Patterson did so but then tried to run away, and the officers forced him to the ground. When the officers handcuffed him, a loaded pistol fell out of his waistband.

A grand jury returned an indictment charging Patterson with one count of being a felon in possession of a firearm, in

violation of 18 U.S.C. § 922(g)(1). The indictment listed Patterson's prior Oregon state felony convictions, including a third-degree assault conviction in 1996 and two strangulation convictions, one in 2014 and one in 2017.

At the time of Patterson's indictment, a defendant who violated section 922(g) was ordinarily subject to a maximum sentence of 10 years of imprisonment, with no mandatory minimum sentence. 18 U.S.C. § 924(a)(2) (2018); *see also* Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c)(2), 136 Stat. 1313, 1329 (2022) (codified at 18 U.S.C. § 924(a)(8)) (increasing the statutory maximum to 15 years). But under the ACCA, a defendant who has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," faces a mandatory minimum sentence of 15 years of imprisonment and a maximum of life. 18 U.S.C. § 924(e)(1); *United States v. Bland*, 961 F.2d 123, 128 (9th Cir. 1992).

Patterson pleaded guilty. In his plea agreement, he admitted that he "knowingly" and "unlawfully possess[ed] [a] firearm" that had been transported in interstate commerce and that he "had been previously convicted of a crime punishable by imprisonment for [a] term exceeding one year." His plea agreement stated that the government would "argue at sentencing that defendant is subject to the Armed Career Criminal Act" and that Patterson could argue the opposite. At sentencing, Patterson did just that, arguing that none of his Oregon convictions was for a "violent felony" and therefore none constituted an ACCA predicate offense.

The district court held that the Oregon third-degree assault and strangulation convictions were violent felonies and found that the 1996 assault conviction and 2014 and

2017 strangulation convictions "could be used to make up the three convictions" necessary to trigger the ACCA enhancement. Noting that Patterson's case presented "exactly the situation that the [ACCA] was intended" to cover, the court sentenced Patterson to the mandatory minimum of 180 months of imprisonment.

## II

The Fifth Amendment guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Sixth Amendment guarantees all criminal defendants "the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. In *Apprendi*, the Supreme Court interpreted those provisions to mean that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490; *see also Almendarez-Torres v. United States*, 523 U.S. 224, 230 (1998); *Jones v. United States*, 526 U.S. 227, 232 (1999) (holding "that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt"). The Court has since extended *Apprendi* to any fact that increases the statutory maximum *or* minimum sentence. *See Alleyne v. United States*, 570 U.S. 99, 114–16 (2013).

The district court's determination that Patterson committed his prior offenses "on occasions different from one another" made him subject to the ACCA, thereby increasing both the statutory minimum and the statutory maximum sentence for his violation of section 922(g). Patterson argues that the district court violated *Apprendi*

because the indictment did not allege that the offenses were committed on different occasions and because the court found that fact itself instead of submitting the question to a jury. At sentencing, Patterson forfeited that argument because he did not invoke *Apprendi* or otherwise challenge the court's authority to make a finding about whether his prior offenses were committed on different occasions. Thus, we would ordinarily review for plain error. *See United States v. Williams*, 5 F.4th 973, 978 (9th Cir. 2021); Fed. R. Crim. P. 52(b). But the government has expressly waived any argument that Patterson forfeited the *Apprendi* issue. We therefore treat Patterson's *Apprendi* challenge as if it were properly preserved, *see United States v. Kortgaard*, 425 F.3d 602, 610 (9th Cir. 2005), and review de novo whether the district court violated Patterson's constitutional rights at sentencing, *see United States v. Walker*, 953 F.3d 577, 578 n.1 (9th Cir. 2020).

Under *Apprendi*, a sentencing judge evaluating a defendant's prior conviction may "determine what crime, with what elements, the defendant was convicted of." *Mathis v. United States*, 579 U.S. 500, 512 (2016). But the judge may not find facts related to "the manner in which the defendant committed th[e] offense." *Id.* at 511. "To conduct the narrow inquiry" into a prior conviction that *Apprendi* permits, a sentencing court "may sometimes consult 'a restricted set of materials,' often called *Shepard* documents, that include judicial records, plea agreements, and colloquies between a judge and the defendant." *Erlinger v. United States*, 602 U.S. 821, 839 (2024) (quoting *Descamps v. United States*, 570 U.S. 254, 262 (2013)); *see also Shepard v. United States*, 544 U.S. 13, 20–21 (2005).

In *United States v. Grisel*, we held that because "the dates of [a defendant's] prior convictions are . . . a part of the 'fact'

of his prior convictions," a sentencing judge may rely on them in making a different-occasions finding without violating *Apprendi*. 488 F.3d 844, 847 (9th Cir. 2007) (en banc), *abrogated on other grounds by United States v. Stitt*, 586 U.S. 27 (2018); *accord Walker*, 953 F.3d at 581. The Supreme Court called that precedent into question in *Wooden v. United States* when it held that the ACCA different-occasions inquiry is "multi-factored" and may require consideration of "a range of circumstances," including whether the offenses were "committed close in time," their "[p]roximity of location," "the character and relationship of the offenses," and whether they "share a common scheme or purpose." 595 U.S 360, 369 (2022). Although the Court expressly declined to address "whether the Sixth Amendment requires that a jury, rather than a judge, resolve whether prior crimes occurred on a single occasion," *id.* at 365 n.3, the government in this case conceded that under *Wooden*, the different-occasions element "must be charged in the indictment and either admitted by a defendant or found by a jury."

After hearing argument, we stayed this case pending the Supreme Court's resolution in *Erlinger* of the question whether a sentencing court may make a different-occasions finding. The Court in *Erlinger* held that because "under *Wooden*, deciding whether . . . past offenses occurred on three or more different occasions is a fact-laden task," a defendant is "entitled to have a jury resolve ACCA's occasions inquiry." *Erlinger*, 602 U.S. at 834–35 (citing *Wooden*, 595 U.S. at 369). A sentencing court has no "authority [to] . . . assume for itself the responsibility of deciding whether [a defendant's] past offenses differed enough in time, location, character, and purpose to have

transpired on different occasions . . . with an eye toward increasing his punishment." *Id.* at 840.

Applying *Erlinger*, we agree with both parties that the district court violated *Apprendi* by determining whether Patterson committed his prior offenses on different occasions. Making that determination required the court to ascertain facts beyond "a prior conviction and the then-existing elements of that offense," and Patterson did not admit those facts in his guilty plea. *Erlinger*, 602 U.S. at 839; *see Mathis*, 579 U.S. at 511. Our prior decision in *Grisel* is "clearly irreconcilable" with *Erlinger* and has "been effectively overruled" by it. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

Our conclusion that the sentencing court violated *Apprendi* does not end our inquiry, however, because "[n]ot all violations of *Apprendi* warrant reversal." *United States v. Guerrero-Jasso*, 752 F.3d 1186, 1193 (9th Cir. 2014). Federal Rule of Criminal Procedure 52(a) provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Even constitutional errors may be disregarded if they are harmless, unless they fall into the limited class of "structural errors" that "*necessarily* render a criminal trial fundamentally unfair." *Neder v. United States*, 527 U.S. 1, 14, 9 (1999). An *Apprendi* error is not a structural error and is therefore subject to harmless-error review. *Washington v. Recuenco*, 548 U.S. 212, 222 (2006); *Guerrero-Jasso*, 752 F.3d at 1193. As Patterson rightly acknowledges, an *Apprendi* error involving an ACCA different-occasions finding is no exception. *See Erlinger*, 602 U.S. at 849–50 (Roberts, C.J., concurring); *United States v. Brown*, 136 F.4th 87, 96 (4th Cir. 2025); *United States v. Butler*, 122 F.4th 584, 589 (5th Cir. 2024); *United States v. Campbell*, 122 F.4th 624, 630

(6th Cir. 2024); *United States v. Johnson*, 114 F.4th 913, 917 (7th Cir. 2024); *United States v. Bowling*, 135 F.4th 1125, 1126 (8th Cir. 2025); *United States v. Rivers*, 134 F.4th 1292, 1305–06 (11th Cir. 2025).

To establish that an error was harmless, the government must show "beyond a reasonable doubt that the result 'would have been the same absent the error.'" *United States v. Zepeda-Martinez*, 470 F.3d 909, 913 (9th Cir. 2006) (quoting *Neder*, 527 U.S. at 19). In the *Apprendi* context, the government can do so by establishing that "the record contains 'overwhelming' and 'uncontroverted' evidence" of the fact that should have been submitted to a jury. *Id.* (quoting *Neder*, 527 U.S. at 17–18); *see Recuenco*, 548 U.S. at 220–22.

The record here contains overwhelming and uncontroverted evidence that Patterson committed his offenses on different occasions. The Supreme Court observed in *Erlinger* that although "no particular lapse of time or distance between offenses *automatically* separates a single occasion from distinct ones," they are "[o]ften . . . separated by enough time and space that there is little question [a defendant] committed them on separate occasions." 602 U.S. at 841–42 (emphasis added). There, the Court stated that a jury presented with additional details about the defendant's prior burglaries "might not have" found that they occurred on different occasions even though they took place days apart because the jury could have agreed with the defendant that the offenses occurred "during a single criminal episode." *Id.* at 835, 827. But the Court did not address harmless error, and it "d[id] not question . . . that in many cases the occasions inquiry will be straightforward." *Id.* at 842 (internal quotation marks and citation omitted). For example, courts "have nearly always treated offenses as

occurring on separate occasions if a person committed them a day or more apart." *Wooden*, 595 U.S. at 370.

This is one of the "straightforward and intuitive" cases in which "a single factor—especially of time or place—can decisively differentiate occasions." *Wooden*, 595 U.S. at 369–70. Patterson's offenses were separated not by several days but by several years: His assault conviction was in 1996 and his strangulation convictions were in 2014 and 2017. Other than the fact that his strangulation convictions were for the same type of offense and occurred in the same county in Oregon, Patterson points to no evidence even hinting at the possibility that they shared a common scheme or purpose or were otherwise related. The facts here do not remotely resemble those of *Wooden*, in which the Court held that Wooden's ten burglary convictions were committed on a single occasion because they occurred "at one location," "on a single night, in a single uninterrupted course of conduct," and shared the same "scheme," "motive," and "means." *Id.* at 370; *see also United States v. Beasley*, 163 F.4th 403, 410 (7th Cir. 2025) ("We can think of 'no colorable argument' for treating offenses separated by over a year as having been committed on the same occasion." (quoting *United States v. Richardson*, 60 F.4th 397, 399 (7th Cir. 2023))).

Patterson points out that the Oregon statute of limitations is six years, so it is at least theoretically possible that the two strangulation convictions, which were three years apart, were based on conduct that was closer together in time or perhaps even contemporaneous. Or. Rev. Stat. § 131.125(2)(a) (2013). But Patterson's speculation is contradicted by the record. The Oregon indictments, which were in the record presented to the district court, specify that the strangulation offenses involved conduct occurring on January 10, 2014, and June 24, 2017. In describing

Patterson's conduct, the presentence report set out the same dates, and although Patterson made a general objection to a different-occasions finding, he did not challenge that aspect of the report. To the contrary, his own sentencing memorandum restated the dates of the offense conduct as set out in the presentence report. "[A] court 'may accept any undisputed portion of the presentence report as a finding of fact.'" *Zepeda-Martinez*, 470 F.3d at 913 (quoting Fed. R. Crim. P. 32(i)(3)(A)); *see United States v. Loines*, 165 F.4th 475, 484 (6th Cir. 2026) ("Courts thus may examine the facts in the defendant's presentence report" in assessing the harmlessness of an error under *Erlinger*, "especially when the defendant does not object to those facts."). Our analysis might be different if Patterson had "expressly contested the facts at issue and pointed to 'evidence sufficient to support a contrary finding,'" *United States v. Hunt*, 656 F.3d 906, 915 (9th Cir. 2011) (quoting *Neder*, 527 U.S. at 19), or if he had otherwise demonstrated that he did not "accede to the [presentence report's] recitation of the dates," *Guerrero-Jasso*, 752 F.3d at 1195. But he did not.

Based on the record, we are confident that no reasonable jury could determine that offenses committed three years apart were committed on the same occasion. The *Apprendi* error was therefore harmless beyond a reasonable doubt.

## III

Patterson also disputes the district court's determination that his Oregon assault and strangulation convictions are violent felonies constituting ACCA predicates. We review de novo a district court's conclusion that a prior conviction is a predicate offense under the ACCA. *United States v. Parnell*, 818 F.3d 974, 978 (9th Cir. 2016).

As relevant here, an offense is a "violent felony" under the ACCA if it is punishable by imprisonment for a term exceeding one year and "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). "Physical force" must be "force capable of causing physical pain or injury to another person," so a mere "offensive touching" does not qualify. *Johnson v. United States*, 559 U.S. 133, 139–140 (2010). And because the statute requires the "use" of force "against" another—words that refer to volitional conduct—it "covers purposeful and knowing acts, but excludes reckless conduct" and negligence. *Borden v. United States*, 593 U.S. 420, 432–33 (2021) (plurality opinion); *see United States v. Begay*, 33 F.4th 1081, 1091–92 (9th Cir. 2022) (en banc).

To determine whether an offense constitutes an ACCA predicate, we employ a "categorical approach" under which "the facts of a given case are irrelevant" and "[t]he focus is instead on whether the elements of the statute of conviction meet the federal standard." *Borden*, 593 U.S. at 424 (plurality opinion); *see Taylor v. United States*, 495 U.S. 575, 600 (1990). Under that approach, we must "determine whether the state statute under which the defendant was convicted criminalizes only conduct that is a violent felony under ACCA." *United States v. Walton*, 881 F.3d 768, 771 (9th Cir. 2018).

If the statute of conviction is overbroad—that is, if it criminalizes some conduct that does not constitute a violent felony—we apply a "modified categorical approach" by considering whether the statute is divisible. *Walton*, 881 F.3d at 772. A statute is divisible when it "sets out one or more elements of the offense in the alternative," *Descamps*, 570 U.S. at 257, such that it effectively "define[s] multiple

crimes," *Mathis*, 579 U.S. at 505. For a divisible statute, "we may look beyond" the elements of the offense "to the documents of conviction, i.e., to 'the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding and the judgment,' to determine whether the [defendant] was convicted of a set of elements that falls within" the ACCA definition of a violent felony. *Ramirez v. Lynch*, 810 F.3d 1127, 1131 (9th Cir. 2016) (quoting *Fernandez–Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006)); *see Shepard*, 544 U.S. at 20–21. If the defendant was convicted of elements falling within the ACCA definition, then the specific "crime of conviction" is a categorical match. *United States v. Lawrence*, 905 F.3d 653, 658 (9th Cir. 2018).

## A

We first consider Patterson's third-degree assault conviction. In Oregon, third-degree assault, which carries a punishment of up to five years of imprisonment, is committed by anyone who, "[w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another." Or. Rev. Stat. § 163.165(1)(e) (1995); *see id.* § 163.165(2) (defining third-degree assault as a class C felony); *id.* § 161.605 (specifying the punishment for class C felonies).

Patterson's conviction is an ACCA predicate because the Oregon statute requires that a defendant intentionally or knowingly cause "physical injury," so it has "as an element the use . . . of physical force." 18 U.S.C. § 924(e)(2)(B)(i); *see* Or. Rev. Stat. § 161.015(7) (1995) (defining "physical injury" as "impairment of physical condition or substantial pain"). "[A] defendant charged . . . [with] assault resulting in bodily injury[] necessarily must have committed an act of

force in causing the injury." *United States v. Juvenile Female*, 566 F.3d 943, 948 (9th Cir. 2009); *see also United States v. Edling*, 895 F.3d 1153, 1156 (9th Cir. 2018).

Patterson argues that Oregon's statute is overbroad because, he says, it (1) allows for conviction on a theory of accomplice liability that does not require a defendant to have acted intentionally or knowingly, (2) does not require a defendant to knowingly cause injury, and (3) criminalizes nonviolent conduct by holding defendants liable for the conduct of others as long as it is "extensively intertwined" with the infliction of injury. We find none of those arguments persuasive.

First, Patterson argues that at the time of his conviction, the statute allowed conviction as an accomplice without proof of intentional or knowing conduct. By statute, accomplice liability is implicitly included in all Oregon crimes. Or. Rev. Stat. §§ 161.150, 161.155 (1995); *see Alfred v. Garland*, 64 F.4th 1025, 1032 (9th Cir. 2023) (en banc). But Patterson's argument fails for two reasons: Patterson was convicted as a principal, not an accomplice, and Oregon accomplice liability requires proof of intentional or knowing conduct.

The Oregon statute is divisible as to the liability of accomplices and principals. "[I]n analyzing the divisibility question, we must look to the text and structure of the statute as well as to state case law." *Lopez-Marroquin v. Garland*, 9 F.4th 1067, 1074 (9th Cir. 2021). Oregon accomplice liability has a set of elements distinct from the elements of principal liability. *State v. Lopez-Minjarez*, 260 P.3d 439, 442–43 (Or. 2011); *see State v. Blake*, 228 P.3d 560, 563 (Or. 2010). For a person to be held liable, the accomplice-liability statute requires that the person (1) "[a]ids or abets or agrees

or attempts to aid or abet [another] person in planning or committing the crime" (2) "[w]ith the intent to promote or facilitate the commission of the crime." Or. Rev. Stat. § 161.155(2)(b) (1995). By contrast, principal liability for third-degree assault requires "intentionally or knowingly caus[ing] physical injury to another" while "aided by another person actually present." *Id.* § 163.165(1)(e). Because Oregon law requires "substantively different elements" for each theory of liability, accomplice and principal liability are not merely "alternative factual means of committing a single offense." *United States v. Buck*, 23 F.4th 919, 925 (9th Cir. 2022).

Oregon case law confirms this conclusion. A statute is divisible if juries must agree on the statutory alternative under which the defendant is convicted. *Rendon v. Holder*, 764 F.3d 1077, 1085–86 (9th Cir. 2014); *accord United States v. Robinson*, 869 F.3d 933, 938 (9th Cir. 2017). Oregon law is clear that the jury must determine whether a defendant is liable as an accomplice or as a principal: Because the elements of accomplice liability are "separate from and in addition to the elements necessary to prove the principal's liability for the underlying offense[,] . . . jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other." *State v. Phillips*, 317 P.3d 236, 240–41 (Or. 2013).

Applying the modified categorical approach, we may examine Patterson's charging documents, which make clear that he directly inflicted the victim's injury and was therefore convicted as a principal, not an accomplice. His indictment alleged that he "cause[d] physical injury to [the victim] by striking [the victim] with a shotgun." And, crucially, in his plea agreement, Patterson unambiguously admitted guilt as a principal, not an accomplice, stating, "I caused physical

injury to [the victim] while aided by another person." The plea agreement does not mention any of the elements of accomplice liability under Oregon law, and Patterson points to no other evidence indicating that he pleaded guilty as an accomplice.

In any event, Patterson is wrong to suggest that the possibility of a conviction based on accomplice liability would make the Oregon assault statute overbroad by criminalizing unintentional conduct. According to Patterson, at the time of his conviction in 1996, the accomplice-liability statute had that effect because Oregon's uniform criminal jury instructions advised that "[a] person who aids and abets another in committing a crime . . . is also criminally responsible for any act or other crime that [was] committed as a natural and probable consequence of the . . . intended crime." *Lopez-Minjarez*, 260 P.3d at 442 (quoting Or. State Bar Comm. on Unif. Crim. Jury Instructions, *Oregon Uniform Criminal Jury Instructions*, No. 1051 (2009)). Until that instruction was abrogated by the Oregon Supreme Court's 2011 decision in *Lopez-Minjarez*, juries were instructed "[t]hat criminal responsibility attaches . . . for any naturally consequential crime, without regard to whether the defendant acted with . . . intent." *Id.* at 443.

Oregon jury instructions cannot extend the reach of Oregon statutes. They "are drafted by a committee of members of the Oregon State Bar," not by the Oregon Legislature. *Lopez-Minjarez*, 260 P.3d at 443 n.4; *see* Or. State Bar Comm. on Unif. Crim. Jury Instructions, *Oregon Uniform Criminal Jury Instructions* (2009). They represent "a salutary effort on the part of legal practitioners in Oregon to state the law in a correct way that is helpful to jurors," but they "are not themselves the law." *Lopez-Minjarez*, 260 P.3d at 443 n.4. Instead, as the Oregon Supreme Court explained

in *Lopez-Minjarez*, "[a]ccomplice liability is both created by and limited by [section] 161.155" of the Oregon Revised Statutes, not by the jury instructions in use at a given time. *Id.* at 443.

Section 161.155, enacted in 1971, plainly requires "intent to promote or facilitate the commission of the crime" as a condition of accomplice liability. Or. Rev. Stat. § 161.155(2) (1995). The statute therefore "created accomplice liability only for the crime that a defendant intended to promote or facilitate, not for any additional crimes that might be considered the natural and probable consequence of that crime, regardless of the defendant's intent." *Lopez-Minjarez*, 260 P.3d at 443. Accomplice liability under section 161.155 required intentional conduct at the time of Patterson's conviction, and the contrary language in the jury instructions "incorrectly state[d] the principles of accomplice liability under Oregon law." *Id.* at 442.

Patterson contends that defendants in cases before *Lopez-Minjarez* could have been convicted of aiding and abetting third-degree assault without proof of intentional or knowing conduct. But the potential for wrongful convictions arising from improper jury instructions does not mean that a *statute* is overbroad. Appellate courts often find that jury instructions misstate the law. *See, e.g.*, *Bearchild v. Cobban*, 947 F.3d 1130, 1142 (9th Cir. 2020); *United States v. Paul*, 37 F.3d 496, 500–01 (9th Cir. 1994). Patterson has identified no cases before *Lopez-Minjarez* in which a defendant challenged his conviction under the natural-and-probable-consequences instruction. Had such a case arisen, there is no reason to doubt that the Oregon Supreme Court would have said the same thing it ultimately said in *Lopez-Minjarez* and reversed the conviction. The decision in *Lopez-Minjarez*,

after all, did not "not pretend to make a new law, but to vindicate the old one from misrepresentation." 1 William Blackstone, *Commentaries on the Laws of England* 70 (1765). A "misrepresentation" about the law does not change what the law is, even if that misrepresentation is endorsed by the state bar.

Patterson relies on the 2013 decision of the Oregon Court of Appeals in *Hale v. Belleque* to argue that the pre-*Lopez-Minjarez* jury instruction correctly stated the Oregon law of accomplice liability. 298 P.3d 596, 618 (Or. Ct. App. 2013). But *Hale* does not support his argument. *Hale* addressed an ineffective assistance of counsel claim based on trial counsel's failure to object to the uniform instruction. *Id.* at 618–19. In holding that counsel was not inadequate, the court explained that counsel's decision not to object to the instruction reflected a "reasonable exercise of professional skill and judgment" because counsel did not have the benefit of *Lopez-Minjarez*. *Id.* at 618. That reasoning does not mean that the instruction was a correct statement of the law, and *Lopez-Minjarez* establishes that it was not. Patterson points out that *Hale* quoted an Oregon Supreme Court opinion that described the instruction as "a correct statement of the law," 298 P.3d at 618 (quoting *State v. Gibson*, 448 P.2d 534, 537 (Or. 1968)), but that case construed an earlier accomplice-liability statute. *Compare* Or. Rev. Stat. § 161.220 (1967), *repealed by* 1971 Or. Laws ch. 743, § 432, *with* 1971 Or. Laws ch. 743, § 13 (codified at Or. Rev. Stat. § 161.155). Even if the instruction correctly stated a principle of accomplice liability in 1968, it did not correctly describe accomplice liability under the statute in effect at the time of Patterson's conviction. *See State v. Lopez-Minjarez*, 237 P.3d 223, 232 (Or. Ct. App. 2010), *aff'd in relevant part*, 260 P.3d 439 (Or. 2011).

Second, Patterson argues that Oregon third-degree assault is overbroad because it does not require a defendant to cause injury knowingly. Under Oregon law, he contends, "the state needs to prove only that defendant was aware of the assaultive nature of his conduct and that his conduct in fact caused the victim serious physical injury," not that the defendant knew what the result of his conduct would be. *State v. Barnes*, 986 P.2d 1160, 1167 (Or. 1999), *overruled on other grounds by State v. Owen*, 505 P.3d 953 (Or. 2022). According to Patterson, that is inconsistent with the ACCA's requirement that a violent felony involve intentional or knowing conduct. *See Borden*, 593 U.S. at 426 (plurality opinion).

Patterson's argument is contrary to *Johnson*, which "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Stokeling v. United States*, 586 U.S. 73, 84 (2019). To act "knowingly," as that term is understood in the ACCA context, a defendant need only be aware of "the physical contest between the criminal and the victim" that creates the "potentiality" of injury. *Id.* at 83–84. The Oregon statute requires such awareness, so it is not overbroad.

Third, Patterson argues that the Oregon statute is overbroad because it criminalizes acts that do not themselves involve the defendant's use of physical force but are merely "intertwined" with another person's violent conduct. He points out that a defendant can commit third-degree assault in Oregon either by "inflic[ting] physical injury directly himself" or by "engag[ing] in conduct so extensively intertwined with infliction of the injury that such conduct can be found to have produced the injury." *State v. Pine*, 82 P.3d 130, 137 (Or. 2003).

To determine whether the Oregon statute criminalizes acts that do not involve physical force, we examine state "case law to see whether there is 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct'" not covered by ACCA's force clause. *Alfred*, 64 F.4th at 1043 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Demonstrating a realistic probability "requires more than the application of legal imagination to a state statute's language." *Duenas-Alvarez*, 549 U.S. at 193. The defendant must "point to . . . cases in which the state courts in fact did apply the statute in the [overbroad] manner for which he argues." *Id.*

Oregon case law makes clear that a defendant uses violent physical force when he engages in conduct "extensively intertwined" with the infliction of physical injury. *See Pine*, 82 P.3d at 137. For a defendant to be liable under the "extensively intertwined" doctrine, the victim's injury must be "the direct and immediate effect of [the] defendant's act." *Phillips*, 317 P.3d at 241 (applying the doctrine where the defendant prevented the victim's brother from shielding the victim from the blow that resulted in injury); *accord State v. M.M.A.*, 406 P.3d 142, 146–47 (Or. Ct. App. 2017) (holding the victim in place on the floor while another assailant punched and kicked her); *State ex rel. Juv. Dep't of Douglas Cnty. v. K.C.W.R.*, 230 P.3d 973, 976 (Or. Ct. App. 2010) (preventing the victim from defending himself against the assault by attacking him as the victim tried to avoid blows); *State v. Munoz*, 348 P.3d 296, 301 (Or. Ct. App. 2015) (chasing down and punching the victim while another fatally stabbed him). Evidence that a defendant was "merely present" or engaged in related activities "further off" from the victim's assault is not sufficient. *State v. Fry*, 228 P.3d 630, 633 (Or. Ct. App. 2010); *see State v. Reynolds*,

280 P.3d 1046, 1048–49 (Or. Ct. App. 2012) (fighting the victim's girlfriend while the victim was stabbed by another "nearby" assailant was not "extensively intertwined").

Conduct that directly and immediately causes injury is necessarily "*capable* of causing physical pain or injury." *Johnson*, 559 U.S. at 140 (emphasis added). The "extensively intertwined" doctrine therefore applies only to violent conduct within the meaning of the ACCA.

B

Finally, we reject Patterson's argument that Oregon's strangulation offense is not categorically violent. Strangulation under Oregon law requires "knowingly imped[ing] the normal breathing or circulation of the blood of another person by . . . [a]pplying pressure on the throat or neck of the other person" or "[b]locking the nose or mouth of the other person." Or. Rev. Stat. § 163.187(1) (2017).

In *Flores-Vega v. Barr*, we held that strangulation under Oregon law is a crime of violence because it "has as an element the use . . . of physical force." 932 F.3d 878, 884 (9th Cir. 2019) (alteration in original) (quoting 18 U.S.C. § 16(a)). *Flores-Vega* is controlling here. Although that case involved the definition of a "crime of violence" in section 16(a) rather than the definition of "violent felony" in section 924(e)(2)(B)(i), the two definitions are "relevantly identical." *Borden*, 593 U.S. at 427 (plurality opinion); *see also United States v. Garcia-Lopez*, 903 F.3d 887, 893 (9th Cir. 2018), *overruled on other grounds by United States v. Gomez*, 165 F.4th 1199 (9th Cir. 2026) (en banc).

Patterson contends that *Flores-Vega* was wrongly decided because the Oregon statute might extend to a touching that causes "a mere momentary impairment of

breathing [that] could not realistically cause physical injury." A three-judge panel, however, cannot reexamine circuit precedent unless "our prior decision [has] been undercut by higher authority to such an extent that it has been effectively overruled," which is not the case here. *Miller*, 335 F.3d at 899; *see also AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1142–44 (9th Cir. 2024) (Miller, J., concurring) (discussing the application of the *Miller* standard to questions of state law). And in any event, *Flores-Vega* was rightly decided. To constitute violent force under the ACCA, the defendant's conduct need not "cause pain or injury or even be prolonged." *Stokeling*, 586 U.S. at 83. It need only be "*capable* of causing physical pain or injury." *Johnson*, 559 U.S. at 140 (emphasis added). Even momentarily impeding a person's normal breathing or blood circulation is conduct capable of causing physical pain or injury. Even if a defendant could somehow impede normal breathing or blood circulation through mere "offensive touching," *id.* at 139, Patterson has pointed to no cases showing a "realistic probability, not a theoretical possibility," that Oregon courts would convict defendants based on such conduct, *Duenas-Alvarez*, 549 U.S. at 193.

**AFFIRMED.**

BERZON, Circuit Judge, concurring:

I concur in the majority opinion in all but one respect. The charging documents establish that Patterson was convicted as a principal, not as an accomplice. That ends the inquiry under the modified categorical approach. It is therefore unnecessary, in my view, to address Patterson's remaining arguments as to the overbreadth of the accomplice liability statute and the Oregon Supreme Court's discussion of accomplice liability in *State v. Lopez-Minjarez*, 260 P.3d 439 (Or. 2011). I would not do so, and so do not join the part of the majority opinion that holds that *Lopez-Minjarez*, which postdates Patterson's 1996 conviction, is determinative of the elements of accomplice liability at the time of that conviction.

I otherwise agree with the majority opinion that, under *Erlinger v. United States*, 602 U.S. 821 (2024), the district court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by itself determining whether Patterson committed the predicate offenses relevant to his sentence enhancement on different occasions rather than submitting that inquiry to a jury.

I write separately to express my continued concerns regarding this court's application of the harmless error review standard established in *Neder v. United States*, 527 U.S. 1 (1999), to cases, like this one, in which no jury trial took place. I urge this court to reconsider *en banc* its precedent holding that all "*Apprendi* errors are reviewed under the harmless error standard applied in *Neder*." *United States v. Henderson*, 998 F.3d 1071, 1073–74 (9th Cir. 2021) (citing *United States v. Hunt*, 656 F.3d 906, 911 (9th Cir. 2011)).

## I.

As I first explained in my concurrence to *United States v. Guerrero-Jasso*, 752 F.3d 1186 (9th Cir. 2014), this court's approach to harmless error review under *Apprendi* took a wrong turn in *United States v. Zepeda-Martinez*, 470 F.3d 909 (9th Cir. 2006). We long conducted review of *Apprendi* error independent of the "overwhelming and uncontroverted" standard described in *Neder*. 527 U.S. at 9; *see also Guerrero-Jasso*, 752 F.3d at 1198–1200 (Berzon, J., concurring) (collecting cases). "*Zepeda-Martinez*, however, apparently deeming this long line of cases incompatible with *Washington v. Recuenco*, 548 U.S. 212 (2006), held that *Neder*'s brand of harmless error review applies to 'properly preserved' *Apprendi* violations, too." *Guerrero-Jasso*, 752 F.3d at 1201 (Berzon, J., concurring) (citation modified).

*Recuenco* did not so hold. Although *Recuenco* affirmed that *Apprendi* violations are reviewable for harmless error, "it did not mandate any particular *method* for conducting that review." *Id.* Indeed, *Recuenco* never discussed *Neder*'s mode of harmless error review. "*Recuenco* held only that '[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error.'" *Id.* at 1202 (alteration in original) (quoting *Recuenco*, 548 U.S. at 222).

*Neder*'s standard is derived from *Chapman v. California*, 386 U.S. 18 (1967), and tailored to the criminal trial context. "As *Neder* explained, *Chapman* held that constitutional errors during criminal trials are harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Ho-Romero*, 167 F.4th 1037, 1050 (9th Cir. 2026) (citation modified). "*Neder* then concluded that the harmless error

inquiry for omitted elements in jury instructions must be substantially similar to other instances of constitutional error, and that a court must therefore ask whether it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* (citation modified). *Neder*'s reasoning collapses where, as here, there has been no jury trial. So *Zepeda-Martinez* was wrong to export *Neder*'s standard outside the jury trial context.

Before *Zepeda-Martinez* took our case law off course, we applied a different approach, even in cases in which there was a jury trial. As I pointed out in my *Guerrero-Jasso* concurrence, *United States v. Nordby*, 225 F.3d 1053, 1060 (9th Cir. 2000), overruled in part by *United States v. Buckland*, 289 F.3d 558, 567–68 (9th Cir. 2002) (en banc), previously established two potential methods for reviewing *Appendi* violations after trial. *See Guerrero-Jasso*, 752 F.3d at 1200 (Berzon, J., concurring). The first method, termed the "less stringent" approach, "is simply to weigh the extra sentence imposed upon the defendant beyond that permitted by the jury's verdict." *United States v. Minore*, 292 F.3d 1109, 1121 (9th Cir. 2002) (discussing *Nordby*). Under *Nordby*'s "less stringent" approach, "if the defendant receives a sentence greater than that supported by the jury's findings, then he has successfully demonstrated that his substantial rights were affected." *Id.* at 1122. The second, "more stringent" approach, followed *Neder* in plain-error cases only, "to inquire whether it was clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* (citation modified). Although we held that the "less stringent" approach was not applicable to plain-error cases, we "were careful not to suggest that the less stringent approach is no longer available on harmless error review," and "continued to review

properly preserved *Apprendi* claims for harmless error by analyzing only the error's effect on the sentence received, not combing the record for overwhelming, uncontroverted evidence of the sentence-enhancing fact." *Guerrero-Jasso*, 752 F.3d at 1201 (Berzon, J., concurring); *see also United States v. Thomas*, 355 F.3d 1191, 1201 (9th Cir. 2004).[1]

Since *Nordby*, however, we have considered evidence introduced at sentencing by the government as part of harmless error review, "even in cases in which *there was never a trial at all*, even though *Neder*, *Recuenco*, and *Nordby* all involved jury verdicts." *Guerrero-Jasso*, 753 F.3d at 1203 (Berzon, J., concurring); *see also Hunt*, 656 F.3d at 913–16; *Zepeda-Martinez*, 470 F.3d at 913; *Guerrero-Jasso*, 753 F.3d at 1193–95. As our case law stands, permitting the government to introduce evidence for the sole purpose of defeating harmless-error review allows a court to do "just what the Supreme Court has said it cannot: relying on its own finding about a non-elemental fact to increase a defendant's maximum sentence." *Guerrero-Jasso*, 753 F.3d at 1203 (Berzon, J., concurring) (quoting *Descamps v. United States*, 570 U.S. 254, 270 (2013)).

To repeat: Where, as here, the defendant waived a jury trial, there is no pre-conviction factual record at all. "To create one after the fact is not only to undermine *Apprendi* but to broaden the defendant's waiver, by allowing courts to make factual determinations concerning a trial that never

---

[1] As the opinion in this case explains, although Patterson did not raise in the district court the argument that the district court violated *Apprendi* by itself finding whether his prior offenses were committed on different occasions, the government waived any arguments that Patterson forfeited the *Apprendi* issue. Patterson's *Apprendi* challenge is therefore treated here "as if it were properly preserved." Opinion at 8 (citing *United States v. Kortgaard*, 425 F.3d 602, 610 (9th Cir. 2005)).

occurred." *Guerrero-Jasso*, 752 F.3d at 1197 (Berzon, J., concurring). So, although this court's precedents permit us to review the *Erlinger* error in Patterson's case under the harmless error standard in *Zepeda-Martinez* and *Neder*, and to consider the "overwhelming and uncontroverted" evidence submitted after his guilty plea, *see* Opinion at 11, I doubt whether we should.

## II.

This court is not the first to conclude that an *Erlinger* error, like other *Apprendi* errors, "is not a structural error and is therefore subject to harmless-error review." *Id.* at 10–11 (collecting cases). But *United States v. Brown*, 136 F.4th 87 (4th Cir. 2025), noted the same concerns about harmless error review that I raise here.

*Brown* concluded that *Erlinger* errors are subject to harmless error review. 136 F.4th at 96. Where Federal Rule of Criminal Procedure 52(a) applies, and where the error is a constitutional one, *Brown* held that the Rule 52(a) burden "requires the government 'to prove beyond a reasonable doubt that the error complained of did not contribute to the [result] obtained." *Id.* at 93 (alteration in original) (quoting *Chapman*, 386 U.S. at 24). Yet, though *Brown* cited *Chapman*, *Neder*, and *Recuenco*, *Brown* rejected the parties' invocation of *Neder*'s "overwhelming and uncontroverted" standard. *Id.* at 97. "While the harmless-error analysis that the parties invoke applies *when a defendant went to trial* and was convicted by the jury," *Brown* observed, "there was no trial" in *Brown*. *Id.*

For that reason, *Brown* instead derived its harmless error standard from *Greer v. United States*, 593 U.S. 503 (2021):

> In this context, the harmless-error burden is different, requiring that the government show that, if the District Court had correctly advised him of the missing element of the offense, it is clear beyond a reasonable doubt that he would not have plead guilty. Thus, the government's harmless-error burden is to show beyond a reasonable doubt that if Brown's indictment had alleged the different occasions element of ACCA and if Brown had been correctly advised at his plea hearing that the was entitled to have a jury resolve that issue unanimously and beyond a reasonable doubt, he would have nonetheless waived that right and admitted as part of his guilty plea that his prior offenses were committed on different occasions.

*Id.* (citation modified). That *Brown* tailored its method of review to the pre-trial context underscores my point that cases premised on guilty pleas and jury trials should not be subject to the same standard of harmless error review.

*     *     *

"If the defendant did not admit an essential fact during his plea colloquy and evidence concerning the fact was not put to a jury, it violates *Apprendi* for a court to allow the government, postconviction, to introduce new evidence, find that evidence of the fact would have been introduced in a hypothetical jury trial, and then determine that the essential fact would have been found by the hypothetical jury had the

newly produced evidence been before it." *Guerrero-Jasso*, 752 F.3d at 1204 (Berzon, J., concurring). This court's precedents—now extended into the *Erlinger* context—permit the government to do just that. So I renew my call for this court to reconsider *en banc* "our *Apprendi* harmless-error cases, particularly *Zepeda-Martinez*." *Id.*